In re John Anthony ZANGRILLI, Beverly Ellen Zangrilli, Bankrupts.

John R. BRANT, Plaintiff,

v.

John Anthony ZANGRILLI, Beverly Ellen Zangrilli, Defendants.

Bankruptcy Nos. BK–78–250, BK–78–251.

United States Bankruptcy Court, D. Rhode Island.

Dec. 21, 1979.

---

J. Joseph Nugent, Jr., Providence, R. I., for plaintiff.

John J. Vallone, Jr., Providence, R. I., for defendants.

## DECISION

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on April 4, 5, 9, 12, and 13, 1979 on the complaint of John Brant to have his debt in this proceeding declared nondischargeable, as having been obtained in violation of § 17a(2) of the Bankruptcy Act. The following relevant facts were adduced at the hearing: John Zangrilli was hired by John Brant, general insurance agent, as a sales manager on February 1, 1977, after running a standard company credit check on him. Within three months, Brant noticed that Zangrilli seemed troubled, and questioned him about it. Zangrilli mentioned that he had "big" financial problems. Brant discussed these problems with Zangrilli over lunch, agreed to loan the defendants $15,000, and did so on May 24, 1977.

Fifteen months later, on August 16, 1978, the Zangrillis filed their voluntary bankruptcy petitions. Brant objects to the discharge of his debt claiming that the loan was obtained through false representation of Zangrilli's financial condition, including the value of his real estate.

Debts not affected by a discharge are dealt with under § 17a(2) of the Bankruptcy Act, which reads in part:

"a. A discharge in bankruptcy shall release a bankrupt from all of his proveable debts . . . except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations . . . ."

The creditor, who has the burden of proof under this section, must establish that:

". . . (1) the debtor made the representations; (2) that at the time he knew they were false; (3) that he made them with the intention and purpose of deceiving the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained the alleged loss and damage as a proximate result of the representations having been made."

In re Taylor, 514 F.2d 1370, 1373 (9th Cir., 1975); see also, In re Vickers, 577 F.2d 683, 687 (10th Cir., 1978); 1A Collier on Bankruptcy, ¶ 17.16 at 1633. Each element of actual fraud, namely intent, reliance, and loss due to a material misrepresentation must be shown by the creditor for an exception to discharge to be granted. Exceptions to discharge are strictly construed, since dischargeability of debt and fresh financial start constitute a basic purpose of a bankruptcy proceeding. Gleason v. Thaw, 236 U.S. 558, 562, 35 S.Ct. 287, 59 L.Ed. 717 (1916); In re Vickers, supra at 686–87.

Brant must first prove, therefore, that Zangrilli made a material false representation. Zangrilli's attorney drafted the loan agreement, which gave Brant a one-half interest in Zangrilli's home on Hall's Lane and provided for payment of the $15,000 with interest at the rate of 8% per annum. The Hall's Lane real estate was described as a "mini-estate, exceptionally well built . . . with barn, inground pool, . . . patio and cabana."[1] The agreement also provided that the $15,000 was to "enable them [Zangrilli] to discharge part of their indebtedness," (emphasis added) and that the "parties contemplate sell-

---

1. Per appraisal report of Kay Myers Realty, dated September 2, 1977 Defendant's Exhibit I.

ing the improved property to pay off the existing mortgage indebtedness thereon, to provide cash to repay Brant Fifteen Thousand Dollars . . . *and to gain a profit for both parties."* (emphasis added)

The house, however, was never sold and the evidence discloses virtually no interest in the property at any price at any time relevant to this proceeding, notwithstanding considerable effort by Zangrilli to dispose of it. The areas in which Zangrilli would most likely have been motivated to misrepresent facts are in reference to either the market value of the subject property, or the purpose of the loan. Zangrilli originally estimated the value of the house to be about $95,000. Both before and after the loan in question, the property had been listed by several realtors at prices ranging from $89,000 to $110,000. The agreement [2] stated that "such property has recently been appraised." Brant never asked for a new appraisal, but he did personally inspect the property and had also seen the confidential financial report on Zangrilli, done by a professional evaluation service which estimated the value of Zangrilli's house to be $90,000 to $95,000.[3]

Brant was also fully aware of Zangrilli's precarious financial situation since the financial report included among other things the type and amount of Zangrilli's mortgages. It is true that subsequent to the Agreement, Zangrilli refinanced the property twice, each time applying only part of the proceeds to the then existing second mortgage, and that none of the surplus was used to repay Brant, as required by Covenant # 4 of the Agreement. However, Zangrilli claimed that Brant knew of, and in fact encouraged these refinancings so that Zangrilli could clear his credit rating, obtain a new first mortgage with which to pay off the second mortgage, and then obtain a new second mortgage to repay Brant's loan. The record supports this contention.

At most, this case involves a breach of contract, certainly not fraud. Brant has not shown that before signing the agree-

ment, Zangrilli intended to, or even contemplated that he might have to resort to the desperate measures he eventually took in his eleventh-hour attempt to bail out of a hopeless financial situation. John Brant's candor is admirable, but even viewing the facts most favorably to his position, a case does not exist under the applicable, mandatory provisions of the Bankruptcy Act.

We conclude that Brant was fully aware of the risks he was assuming. The Agreement was explicit as to Zangrilli's motives for obtaining the loan. It stated "WHEREAS, the Zangrillis are in danger of losing their equity in the improved property because of the threat of their personal bankruptcy proceedings . . ." Brant chose to assume these risks because of the very favorable terms provided for him in the agreement—not because of any misrepresentations made by Zangrilli. See, *In re Wood,* 571 F.2d 284, 285 (5th Cir., 1978); *In re Taylor,* 514 F.2d 1370, 1373 (9th Cir. 1975).

Several recent cases have been based on misrepresentation when loan proceeds are not used for the purpose for which they were requested, See e. g., *In re Brown,* 412 F.Supp. 1066 (W.D.Okl., 1975). Zangrilli agreed to pay off "part of his indebtedness" with the loan and then sell the improved property to pay off the balance of his outstanding debts. Zangrilli did in fact use the $15,000 to pay some debts and to bring current several of his mortgages. He then attempted through a number of realtors to sell the property in accordance with the agreement. The proceeds of the sale were to be used to rescue Zangrilli from his financial difficulties and to generously compensate Brant for making the loan. Unfortunately, the property did not sell.

The record discloses no misrepresentation of any fact made prior to or at the time of the loan. While this case involves serious error in judgment by Zangrilli, the various realtors, *and* Brant as to the market value of the property, hindsight cannot be a basis

---

**2.** Plaintiff's Exhibit No. 1, Page 1, Paragraph 2.  **3.** Defendant's Exhibit H.

for recovery in this type of action. Erroneous assessment of the marketability of real estate is committed by professionals day in and out—but not fraud in these circumstances. A "statement which was true [or thought to be true] when given, will not constitute a false representation because of a subsequent change in the debtor's affairs . . ." 1A *Collier on Bankruptcy,* ¶ 17.-16 at p. 1642. The complete but unanticipated absence of buyer interest in the real estate precipitated the rapid deterioration of Zangrilli's financial condition and was the direct cause of his failure to comply with the agreement.

Even if Plaintiff established that Zangrilli deliberately misrepresented the value of the house, or his financial condition, this Court finds Brant did not rely on either item when he decided to make the loan. Brant testified that the loan was made for reasons that were "90% business and 10% humanitarian." The loan was made with the idea that both parties would "gain a profit." For Brant, this was business speculation in which he stood to gain an impressive return: a one-half interest in Zangrilli's improved property, which Brant believed to have considerable equity, and 8% interest.

Furthermore, Brant testified that he wished to avoid losing Zangrilli as a manager. Brant stated very candidly that he had recently lost a previous manager due to financial troubles, was trying to protect his company's investment in Zangrilli, and did not want Zangrilli to go "under."

Zangrilli's financial condition as an inducement for the loan is not a serious issue, since the parties were all too cognizant of the defendant's problems from the beginning. It is clear that Brant volunteered to make the loan to Zangrilli for both personal and business reasons, and no intent to deceive can be inferred.

We find that the loan agreement was executed in apparent good faith by both parties. Brant entered into the agreement in anticipation of a substantial return on his investment, and Zangrilli obtained cash in order to salvage an anticipated equity in his property. The miscalculation of the real estate market and resulting unsuccessful attempts to sell the property rendered an otherwise sound business arrangement financially disastrous for both parties.

Based upon the foregoing discussion, findings and conclusions, a case has not been established under § 17a(2), and therefore the debt of John Zangrilli is discharged.

The debt of Beverly Zangrilli is also discharged because there is no evidence whatsoever as to her participation in this matter, at any time relevant to these proceedings.

The parties are directed to present a judgment in accordance with the terms of this decision for entry within ten (10) days.