**In re Richard E. MORRIS, Debtor.**

**IOWA STATE DEPARTMENT OF SOCIAL SERVICES, Plaintiff,**

v.

**Richard E. MORRIS, Debtor-Defendant.**

**Bankruptcy No. 80–01031.**
**Adv. No. 80–0191.**

United States Bankruptcy Court, N. D. Iowa, Eastern Division.

April 15, 1981.

Iowa Asst. Atty. Gen. Robert R. Huibregtse and Asst. County Atty. Christian R. Smith, Des Moines, Iowa, for plaintiff.

Peter J. Klauer, Dubuque, Iowa, for debtor-defendant.

WILLIAM W. THINNES, Bankruptcy Judge.

The matter before the Court involves a Complaint to Determine Dischargeability of a Claim under Section 523(a)(5)(A) of the Bankruptcy Code. Briefs regarding the constitutional issue were submitted by both parties. The Court, being fully advised, now makes the following Findings of Fact, Conclusions of Law, and Order:

### FINDINGS OF FACT

1. The Plaintiff, Iowa State Department of Social Services, is an agency of the State of Iowa and an assignee of the right to support payments to which Frances D. Mor-

ris, a welfare recipient and the former spouse of the Debtor-Defendant, is entitled pursuant to an order entered in a uniform support action under Chapter 252A of the Code of Iowa, 1977.

2. On May 2, 1980, Debtor-Defendant filed a voluntary petition in bankruptcy under Chapter 7 of Title 11 of the United States Code.

3. On August 8, 1980, Plaintiff filed a Complaint to Determine Dischargeability of a Claim under 11 U.S.C. § 523(a)(5)(A), alleging that Chapter 252A of the Code of Iowa entitles the Iowa State Department of Social Services to recover child support arrearages from Debtor-Defendant and that the § 523(a)(5)(A) discharge of such debt is unconstitutional.

## CONCLUSIONS OF LAW

1. The application of 11 U.S.C. § 523(a)(5)(A) to discharge past debts in the nature of alimony, maintenance, or support that have been assigned to a state agency by operation of state law is constitutional.

2. To the extent that support arrearages have been assigned to the Iowa State Department of Social Services by operation of Chapter 252A of the Iowa Code, the debt owed by the Debtor-Defendant is dischargeable in bankruptcy under 11 U.S.C. § 523(a)(5)(A).

## ORDER

IT IS THEREFORE ORDERED that Section 523(a)(5)(A) of the Bankruptcy Reform Act of 1978 is constitutional as applied to child support payments that have been assigned to the Iowa State Department of Social Services, and that Division I of Plaintiff's Complaint to Determine Dischargeability of a Claim under 11 U.S.C. § 523(a)(5)(A) is denied and dismissed.

## MEMORANDUM

### DIVISION I

The scope of this opinion is limited to the constitutionality of § 523(a)(5)(A) of the Bankruptcy Reform Act of 1978 (herein-after the "Code") as applied to child support arrearages that have been assigned by a welfare recipient to the Iowa State Department of Social Services. Other issues in this case, i. e., the extent of the welfare benefits provided to Frances D. Morris under the Aid to Dependent Children program and the alleged concealment by Debtor-Defendant of his personal assets and business records, are not addressed by the Court in this opinion.

The issue addressed by the Court is the constitutionality of § 523(a)(5)(A) of the Code which authorizes the discharge of pre-bankruptcy debts for alimony, maintenance or support of a spouse, former spouse or child of the debtor to the extent that such debt has been assigned to another entity. Section 523 provides in relevant part:

§ 523. Exceptions to Discharge.

(a) A discharge under section 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt—

\*     \*     \*     \*     \*     \*

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise;

\*     \*     \*     \*     \*     \*

11 U.S.C. § 523(a)(5)(A). Plaintiff alleges that the application of § 523(a)(5)(A) to discharge the right to child support arrearages that have been assigned to the Iowa State Department of Social Services by operation of Chapter 252A of the Code of Iowa violates the Tenth, Eleventh, and Fourteenth Amendments to the United States Constitution. For the reasons stated in Divisions II, III and IV below, this Court holds that § 523(a)(5)(A) as applied to Debtor-Defendant's pre-bankruptcy support debts that have been assigned to the State is constitutional and that such debts are dischargeable in bankruptcy.

## DIVISION II

The primary objective of Congress in enacting the 1978 Code was to provide debtors with a "fresh start, free from creditor harassment and free from the worries and pressures of too much debt." *H.R.Rep. No. 595*, 95th Cong., 1st Sess. 125 (1977), U.S. Code Cong. & Admin.News 1978, pp. 5787, 6086. One of the most important elements of the fresh start available in bankruptcy is the discharge which releases the debtor from his debts and from all forms of collection attempts by his creditors. Discharge affords the debtor a fresh start in his economic life and is an essential means to accomplish the ultimate goal of bankruptcy—financial rehabilitation.

Congress, however, felt that certain debts of the debtor should be excepted from discharge, *i. e.*, that certain debts should continue to be obligations after the bankruptcy proceeding notwithstanding the bankruptcy discharge. *H.R.Rep. No. 595*, 59th Cong., 1st Session 129 (1977). *See also*, 11 U.S.C. § 523(a)(1)–(9). Since the exceptions to dischargeability of a debt in bankruptcy substantially frustrate the fresh start objective of the Code and the rehabilitative goal of the discharge provisions, courts have consistently recognized the principle of construction providing that the exceptions to dischargeability are to be strictly construed against an objecting creditor and in favor of the debtor's right to discharge. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915); *In re Vickers*, 577 F.2d 683 (10th Cir. 1978); *In re Houtman*, 568 F.2d 651 (9th Cir. 1978); *In re Danns*, 558 F.2d 114 (2d Cir. 1977); *Wukelic v. United States*, 544 F.2d 285 (6th Cir. 1976); *Bostwick v. United States*, 521 F.2d 741 (8th Cir. 1975); *In re Kriger*, 2 B.R. 19 (D.Or. 1979); *In re Zangrilli*, 1 B.R. 717 (D.R.I. 1979).

The legislative history of 11 U.S.C. § 523 reflects the aforementioned policy considerations and supports a narrow construction of the exceptions to discharge. Section 523(a) of the 1978 Code succeeded Section 17(a) of the 1898 Bankruptcy Act which specified certain nondischargeable debts.

The 95th Congress determined that the rehabilitative goal of the discharge provisions of the 1898 Act had been substantially frustrated due to uncertainties regarding the scope of the exceptions thereto, and sought to remedy the deficiencies of Section 17(a) to assure effective relief for consumer debtors. *H.R.Rep. No. 595*, 95th Cong., 1st Sess. 128 (1977). For example, the amount of nondischargeable tax claims was reduced by a clearer definition (and in some cases a reduction) of the time period for accumulation of certain taxes excepted from discharge. *Compare*, 11 U.S.C. §§ 507(a)(6) and 523(a)(1) (1978) *with* Bankruptcy Act § 17(a)(1), 11 U.S.C. § 35(a)(1) (1973).

Congress also recognized the need for refinements in the alimony and support exception to discharge. Section 17(a)(7) of the 1898 Act provided that debts "for alimony due or to become due, or for maintenance or support of wife or child" were not discharged in bankruptcy. A broad construction of this exception to discharge substantially frustrated the debtor's fresh start and financial rehabilitation. A witness appearing before a Subcommittee of the House Judiciary Committee made the following observations and recommendations:

> Unfortunately [Section 17a(7) does not] clearly state that this exception to discharge does not extend to state welfare department liens. This exemption should be a narrow one, benefitting only the expressed beneficiaries, not governmental entities like the welfare department.

> This issue has become even more critical in light of a provision among the recent amendments to the Social Security Act, 42 U.S.C. 656(b) which rather ambiguously states that "a debt which is a child support obligation assigned to a State under [42 U.S.C. 602(a)(26)] is not released by a discharge in bankruptcy." Legislative history indicates that the provision was inserted to protect the rights of the spouse and child, but judicial interpretation could force another meaning upon that section. We do not believe that the Commission or the Judges intended that persons other than the debt-

or's spouse and children deserved privileged status. Therefore, we urge ... redrafting to insure the intended results. *Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 Before the Subcommittee on Civil and Constitutional Rights of the Committee on the Judiciary,* House of Representatives, 94th Cong., 1st Sess. (Dec. 8, 1975) (statement of Ernest L. Sarason, Jr., The National Consumer Law Center, Inc.), reprinted in 4 *Bankruptcy Reform Act of 1978: A Legislative History,* at 942 (1979). The alimony and support exception to discharge was subsequently redrafted to specifically exclude from the discharge exception any debt for alimony, maintenance or support to the extent that "such debt is assigned to another entity, voluntarily, by operation of law, or otherwise." 11 U.S.C. § 523(a)(5)(A). Section 101(14) defines "entity" to include a governmental unit. 11 U.S.C. § 101(14). In addition, Subsection 456(b) of the Social Security Act, 42 U.S.C. § 656(b), which provided that "a debt which is child support obligation assigned to a state under [the 1974 Social Security Amendments] is not released by discharge in bankruptcy under the bankruptcy act," was specifically repealed by Section 328 of Title III of the Bankruptcy Reform Act of 1978. § 328, Title III, Pub.L. 95–598 (Nov. 6, 1978). It is clear that the redrafted language of Section 523(a)(5) of the Code, in combination with the repeal of the contrary Social Security provision, excepts from discharge only those debts for alimony, maintenance, or support owed *directly* to a spouse or dependent. *H.R.Rep. No.* 595, 95th Cong., 1st Sess. 364 (1977); *S.Rep. No.* 989, 95th Cong., 2d Sess. 79 (1978). To the extent that a spouse entitled to support payments assigns her rights to said payments to a governmental agency as a condition to receiving A.F.D.C. benefits, Section 523(a)(5)(A) clearly provides that such debts are dischargeable in bankruptcy. In drafting 11 U.S.C. § 523(a)(5)(A), Congress adopted the view that where the state, not the family of the debtor, would be the recipient of past-due support payments,

such debts would be dischargeable to further the fresh start objective of the Code. *See,* 3 *Collier on Bankruptcy,* ¶ 523.15(4) (15th ed. 1979).

## DIVISION III

■ The primary argument presented by Plaintiff, Iowa State Department of Social Services, is that the federal government is barred by the Tenth Amendment to the United States Constitution from enacting a bankruptcy law which discharges alimony and support obligations that have been assigned to a state. For the reasons stated below, this Court holds that the discharge of pre-bankruptcy support obligations owed to an agency of the state is a proper exercise of the power to enact uniform laws on the subject of bankruptcies granted to Congress under Article I, Section 8, clause 4 of the United States Constitution, and that the application of 11 U.S.C. § 523(a)(5)(A) to said debts is not violative of the state's constitutional rights.

Under Article I, Section 8, clause 4 of the United States Constitution[1] Congress has been granted the plenary power to create uniform laws regarding bankruptcy. *Blanchette v. Connecticut General Ins. Corp.,* 419 U.S. 109, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *Texaco, Inc. v. Liberty Nat. Bank & Trust Co. of Oklahoma City,* 464 F.2d 389 (10th Cir. 1972); *United States v. Fiore,* 434 F.2d 966 (1st Cir. 1970), *cert. denied* 402 U.S. 973, 91 S.Ct. 1659, 29 L.Ed.2d 137 (1971); *United States v. Biancofiori,* 422 F.2d 584 (7th Cir. 1970), *cert. denied* 398 U.S. 942, 90 S.Ct. 1857, 26 L.Ed.2d 277 (1970). An essential element of the bankruptcy power is the power to determine which of the debts of the debtor shall be discharged. Financial rehabilitation, the ultimate goal of bankruptcy law, may not be achieved without the fresh start provided to a financially troubled debtor by the discharge provisions. Since the survival of obligations owed to all creditors, public and private, severely frustrates a debtor's ability to receive a fresh start, Congress has

---

1. *Section 8.* [The Congress shall have Power] [4] To establish ... uniform Laws on the subject of Bankruptcies throughout the United States; U.S.Const. art. I, § 8, cl. 4.

provided that certain governmental obligations are dischargeable in bankruptcy. For example, federal, state and local tax authorities are creditors of practically every taxpayer. To avoid unduly burdening the debtor's fresh start, Congress has determined that old, nonpriority tax obligations are dischargeable in bankruptcy. 11 U.S.C. §§ 523(a)(1)(A), 507(a)(6). *See, Matter of DiVincenzo*, 1 B.R. 528 (Bkrtcy., S.D.N.Y. 1979) (New York City income tax debt legally due and owing on date the return was required to be filed more than three years prior to bankruptcy held discharged in bankruptcy); *Pan American Van Lines v. United States*, 607 F.2d 1299 (9th Cir. 1979) (corporate income tax liability and interest on that liability legally due and owing more than three years prior to bankruptcy held discharged in bankruptcy). *See also, Matter of Harper*, 580 F.2d 165 (5th Cir. 1978); *Wukelic v. United States*, 544 F.2d 285 (6th Cir. 1976); *In re O'Ffill*, 368 F.Supp. 345 (D.Kan.1973); *United States v. Sanabria*, 424 F.2d 1121 (7th Cir. 1970); *In re Kopf*, 299 F.Supp. 182 (E.D.N.Y.1969); *In re Carlson*, 292 F.Supp. 778 (C.D.Cal.1968).

In addition to old state taxes, other obligations owing to a state have also been held dischargeable in bankruptcy. In *Matter of Crisp*, 521 F.2d 172 (2d Cir. 1975), the debtor's statutory obligation to reimburse the State of Connecticut for institutional care at a state psychiatric hospital was held dischargeable in bankruptcy. The Second Circuit stated:

> After Crisp's discharge in bankruptcy, one hopes he will be able to meet his current obligations and perhaps earn his own way. It would frustrate the remedial purposes of the Bankruptcy Act if, when Crisp was finally self-supporting, the State could suddenly appear and assert a claim for over $8,000 for medical care rendered years before. Such a possibility would deny Crisp "a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt." *Perez v. Campbell*, 402 U.S. 637, 648, 91 S.Ct. 1704, 1710, 29 L.Ed.2d 233 (1971).

521 F.2d at 177. *See, Matter of Bruce*, 3 B.R. 77 (N.D.Ill.1980) (direct student loan to debtor from state university held discharged in bankruptcy); *Matter of Foust*, 12 C.B.C. 81 (E.D.Wis.1977) (statutory debt owed to state for hospitalization of debtor's wife and children held discharged in bankruptcy); *Hilliard v. DeCiuceis*, 115 N.Y.S.2d 5, 202 Misc. 197 (Sup.Ct.N.Y.Co.1952) (judgment in favor of state against debtor for relief payments made to the members of the debtor's family held discharged in bankruptcy). *See also, Guarantee Title & Trust Company v. Title Guaranty & Surety Company*, 224 U.S. 152, 32 S.Ct. 457, 56 L.Ed. 706 (1912); 1A *Collier on Bankruptcy* (14th ed. 1978) ¶ 17.13.

Moreover, state officials and entities may not lawfully discriminate against a debtor following the discharge in bankruptcy of obligations the debtor owes to the state. *Handsome v. Rutgers University, State University of New Jersey*, 445 F.Supp. 1362 (D.N.J.1978) (state university's denial of registration to, and withholding of transcript from, a student after her educational loans had been discharged in bankruptcy held to transgress the fresh start policy of the Bankruptcy Act in violation of the Supremacy Clause); *cf., Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (state statute which provided for the suspension of the driver's licenses of persons who had outstanding automobile accident judgments against them, notwithstanding that such judgments had been discharged in bankruptcy, held unconstitutional under the Supremacy Clause because it frustrated the fresh start objectives of the Bankruptcy Act).

It is clear from the case law, the legislative history, and the language of Section 523 of the Code itself that Congress intended to make debts owed to the state and federal governments dischargeable. Plaintiff urges that support obligations owed to the states should be treated differently than the aforementioned discharged governmental obligations, and relies upon the Tenth Amendment to the United States

Constitution[2] and *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

In *National League of Cities v. Usery*, cities, states and intergovernmental organizations brought an action challenging the constitutionality of the 1974 amendments to the Fair Labor Standards Act (the "FLSA") which had extended the federal minimum wage and maximum hour requirements to state and municipal employees. Writing for the Court, Mr. Justice Rehnquist held that insofar as the 1974 amendments operated to "significantly alter or displace the States' abilities to structure employer-employee relationships" in areas of traditional state and local functions, such as "fire prevention, police protection, sanitation, public health, and parks and recreation," such amendments were in violation of the Tenth Amendment to the United States Constitution, and thus were not within the authority granted Congress by the Commerce Clause. 426 U.S. at 851, 852, 96 S.Ct. at 2474, 2475. The majority appeared to apply a two-prong test: (1) whether the governmental activities are "typical of those performed by state and local governments in discharging their dual functions of administering the public law and furnishing public services ... which the States have traditionally afforded their citizens," and (2) whether the challenged federal legislation will "impermissibly interfere" with such traditionally local governmental functions and thereby impair the States' "ability to function effectively" and maintain their "separate and independent existence" in the federal system of government embodied in the Constitution. 426 U.S. at 851, 852, 96 S.Ct. at 2474, 2475.

Plaintiff, on the basis of *Usery*, contends that the enforcement of child support obligations is a traditional governmental function in Iowa, and argues that Section 523(a)(5)(A) of the Bankruptcy Code impermissibly interferes with the State's ability to collect and enforce such obligations.

This Court finds that the case at bar is clearly distinguishable from *Usery*, and that *Usery* therefore is not dispositive of the issue raised by Plaintiff herein. Thus, this Court holds that Congress was acting within its constitutionally delegated powers when it enacted 11 U.S.C. § 523(a)(5)(A) and that the enactment of such section was not barred by the Tenth Amendment.

*Usery* limits, by application of the Tenth Amendment, federal regulation of state and municipal employment relationships pursuant to powers granted Congress under the Commerce Clause. The Court specifically refrained from expressing a view as to whether different results might obtain if Congress sought to affect integral operations of state governments by exercising authority granted it under other sections of the Constitution. 426 U.S. at 852, 96 S.Ct. at 2475. Unlike the broad and general commerce power, the bankruptcy power is a specific power addressing a restricted and identifiable area of societal concern, *i.e.*, the need to provide uniform relief to financially-distressed debtors throughout the United States. Within this particular province, Congress alone has the power to enact uniform laws on the subject of bankruptcies. Since the Constitution forbids the passing of state laws impairing contractual obligations, relief from financially-distressed debtors must come from Congress, if at all. Therefore, applying the balancing approach of *Usery*, 426 U.S. 833, 856, 96 S.Ct. 2465, 2476, 49 L.Ed.2d 245 (1976) (Blackmun, J., concurring), the federal interests of uniform and effective discharge provisions enacted by Congress pursuant to its bankruptcy powers is demonstrably greater than Iowa's interests in collecting support obligations from discharged debtors.

The federal legislation successfully challenged in *Usery*, *i. e.*, the 1974 amendments to the Fair Labor Standards Act, sought to regulate directly the activities of States as public employers. The FLSA amendments operated directly to displace the States'

---

**2.** *Amendment X.* The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people. U.S. Const. Amend. X.

powers to determine the wage which shall be paid to those whom the States employ in order to carry out their traditional governmental functions, what hours those persons will work, and what compensation will be provided when these employees may be called upon to work overtime. The Court determined that compliance with FLSA amendments would have substantial adverse effects upon state and local governments, and in turn upon the citizens who depend upon those governments. In addition to incurring substantially increased labor costs, local governments had been forced to relinquish many programs of substantial importance to the safety and welfare of their citizens. The Court found that the FLSA amendments displaced state policy choices regarding the manner in which the states wished to structure the delivery of those governmental services which their citizens required. 426 U.S. at 847, 96 S.Ct. at 2472. With respect to the coercive effect of the FLSA amendments, the Court stated:

> This congressionally imposed displacement of state decisions may substantially restructure traditional ways in which the local governments have arranged their affairs.

> Our examination of the effect of the 1974 amendments . . . satisfies us that both the minimum wage and the maximum hour provisions will impermissibly interfere with the integral governmental functions of these bodies. . . [Their application to the States will] significantly alter or displace the States' abilities to structure employer-employee relationships in such areas as fire prevention, police protection, sanitation, public health, and parks and recreation.
> [I]t is functions such as these which governments are created to provide, services such as these which the States have traditionally afforded their citizens. If Congress may withdraw from the States the authority to make those fundamental employment decisions upon which their systems for performance of these functions must rest, we think there would be left little of the States' "Separate and independent existence."

426 U.S. at 849, 851, 96 S.Ct. at 2473, 2474. The Court noted that Congress may not exercise its commerce powers so as to force upon the States its choices as to how essential employment decisions within traditional state operations are to be made, and thereby displaced the States' freedom to structure integral operations in some areas of traditional state and local governmental functions. 426 U.S. at 855, 96 S.Ct. at 2475. The majority held, therefore, that the challenged FLSA amendments were not within the authority granted Congress by the Commerce Clause.

Assuming, *arguendo*, that Plaintiff had established that enforcing the payment of support obligations is a traditional state governmental function, the State of Iowa has failed to show that Section 523(a)(5)(A) of the 1978 Bankruptcy Code would have a substantial and adverse effect upon the ability of individual states to meet their child support responsibilities. No such showing has been made in this case, nor can it reasonably be anticipated that such a showing could be made.

Unlike the FLSA amendments held unconstitutional in *Usery*, the federal legislation challenged by Plaintiffs in the case at bar does not attempt to regulate directly state fiscal affairs in employer-employee relationships. Section 523(a)(5)(A) does not transgress upon the right of the States to determine their own budgetary disbursements and thereby displace state employment policies in the operation of their welfare programs. Nor does said discharge provision necessitate that additional disbursements be paid out of state treasuries. Debtor-Defendant is not seeking to collect money from the State of Iowa. A judgment of dischargeability under Section 523(a)(5)(A) does not deplete Iowa's coffers to any extent.

Clearly, the State of Iowa will suffer a certain amount of fiscal adversity by reason of Section 523(a)(5)(A). However, the extent of the economic impact is speculative and unclear. The statistics included in

Plaintiff's brief, *e.g.*, $10.6 million in assigned child support payments actually collected in fiscal year 1979–1980 and $53 million owed in outstanding arrearages, do not demonstrate how much the State of Iowa will lose by reason of discharges in bankruptcy.

In addition to the speculative nature of the estimated dollar loss, the State of Iowa has not alleged that Section 523(a)(5)(A) will force a curtailment of the welfare programs available to its citizens. It does not appear that § 523(a)(5)(A) will displace state welfare policy decisions or cause a substantial restructuring of state welfare programs. There is no evidence that the discharge of support obligations that have been assigned to the State of Iowa will impermissibly interfere with the enforcement of support obligations to the extent that Iowa's ability to function effectively and to maintain its separate and independent existence will be impaired. Therefore, this Court finds that the adverse impact of the discharge provisions upon the ability of the State of Iowa to structure integral operations in what Plaintiff asserts is an area of traditional governmental functions is unreasonably speculative.

Notwithstanding the permissible and laudable public purposes advanced by state welfare programs, the claimed right of the State of Iowa to collect support obligations from discharged debtors must give way to § 523(a)(5)(A) and the federal bankruptcy discharge provisions.

This Court holds that the discharge of support obligations that have been assigned to a state is not barred by the Tenth Amendment. The same conclusion upholding the validity of § 523(a)(5)(A) has been reached by other courts. *In re Glidden*, 8 B.R. 128, 3 Bankr.L.Rep. (CCH) ¶ 67,764 (Bkrtcy., D.Conn.1981); *In re Dobbs*, 7 B.R. 673, 3 Bankr.L.Rep. (CCH) ¶ 67,718 (Bkrtcy., D.Conn.1980). *See, In re Sturgell*, 7 B.R. 59, 3 Bankr.L.Rep. (CCH) ¶ 67,701 (Bkrtcy., S.D.Ohio 1980); *Wymer v. Wymer*, 6 B.C.D. 989, 2 C.B.C.2d 1316 (9th Cir. B.A.P. 1980); *Matter of Garrison*, 6 B.C.D. 689, 2 C.B.C.2d 1110, 5 B.R. 256 (Bkrtcy., E.D.Mich.1980); *In re Allen*, 6 B.C.D. 576, 2 C.B.C.2d 589, 4 B.R. 617 (Bkrtcy., E.D.Tenn. 1980); *In re Brunhoff*, 2 C.B.C.2d 317, 4 B.R. 381 .(Bkrtcy., S.D.Fla.1980); *In re Blair*, 4 B.R. 14 (Bkrtcy., D.Conn.1979); *In re Rivino*, 3 Bankr.L.Rep. (CCH) ¶ 67,055 (D.Conn.1979); *Matter of Merritt*, 5 B.C.D. 899, 1 C.B.C.2d 143, 1 B.R. 113 (Bkrtcy., W.D.Mich.1979); *In re Spell*, 3 Bankr.L. Rep. (CCH) ¶ 67,851 (D.Conn.1981).

## DIVISION IV

Plaintiff also attacks the constitutionality of § 523(a)(5)(A) on Eleventh Amendment grounds; this Court finds, however, that the Eleventh Amendment[3] is not applicable to the dischargeability issue raised by the Plaintiff herein.

The language of the Eleventh Amendment sets forth a jurisdictional bar to suits brought against state governments by non-citizens thereof in federal courts. However, Supreme Court interpretations of the Amendment have led to both expansions and restrictions of its literal application, *e.g.*, expanding its application to include suits brought by citizens of the defendant state, restricting its application to exclude actions to force prospective compliance with federal law, and further restricting its application to federal courts pursuant to Section 5 of the Fourteenth Amendment, thereby abrogating the Eleventh Amendment immunity of the states. J. Nowak, R. Rotunda, J. Young, *Constitutional Law* 48–50 (1978). *See, Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890) (Eleventh Amendment by implication also bars suits brought by citizens of the defendant state); *Edelman v. Jordan*, 415 U.S. 651, 94 S.ct. 1347, 39 L.Ed.2d 662 (1974) (dictum) (Eleventh Amendment does not bar federal court's remedial power to issue prospective

---

**3.** *Amendment XI.* The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. U.S.Const. Amend. XI.

**456**

injunctive relief which compels state officers to disburse state funds to comply with federal welfare regulations so long as such relief does not include a retroactive award which requires the payment of funds from the state treasury); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) (Congress, in enacting the Equal Employment Opportunity Act of 1972 pursuant to Section 5 of the Fourteenth Amendment, may abrogate Eleventh Amendment immunity afforded state employers since the Fourteenth Amendment itself embodies limitations on state authority).

The Section 523(a)(5)(A) dischargeability proceeding herein is not an action barred by the Eleventh Amendment. Debtor-Defendant has not brought suit against the State of Iowa to collect money damages from the state's treasury or to recover other retroactive relief. To the contrary, the State of Iowa is itself the Plaintiff herein seeking to have a debt owed to it by the Debtor-Defendant declared nondischargeable. Although § 523(a)(5)(A) discharge of the Debtor-Defendant's support obligation owed to the state may cause an economic loss to Iowa's future annual gross revenues, the affording of such prospective relief to Debtor-Defendant in bankruptcy is not barred by the Eleventh Amendment.

Plaintiff's attack upon the constitutionality of Section 523(a)(5)(A) on Eleventh Amendment grounds has been fully answered by the Second Circuit in *Matter of Crisp*, 521 F.2d 172 (2d Cir. 1975):

> The Commissioner also argues that the eleventh amendment bars discharge of Crisp's debt without the consent of Connecticut. But the eleventh amendment does not apply here at all. It protects a state from federal court money judgments necessarily paid out of the state treasury. *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The action must be "in the essence one for the recovery of money from the state." *Id., quoting Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). In this case, Crisp is not seeking any

payment from the State treasury. A judgment of dischargeability in the bankruptcy proceeding does not now deplete Connecticut's coffers by a penny.

521 F.2d at 178. *See e.g., In re Glidden*, 3 Bankr.L.Rep. (CCH) ¶ 67,764 (D.Conn.1981); *In re Dobbs*, 3 Bankr.L.Rep. (CCH) ¶ 67,718 (D.Conn.1980); *Connecticut v. Mastrianno*, No. B–79–603 (D.Conn.1980).

This Court holds that the application of 11 U.S.C. § 523(a)(5)(A) to discharge past debts in the nature of alimony, maintenance, or support that have been assigned to an agency of the state is not barred by the Tenth and Eleventh Amendments to the United States Constitution. Because the application of § 523(a)(5)(A) to Plaintiff's claim is constitutional, said debt is dischargeable and Division I of Plaintiff's Complaint to Determine Dischargeability of a Claim under 11 U.S.C. § 523(a)(5)(A) is denied.