**In re Ronald MESSORE and Leilani Messore, Debtors.**

**GENERAL ELECTRO MUSIC, INC., Plaintiff,**

v.

**Ronald MESSORE and Leilani Messore, Defendants.**

**Bankruptcy No. 8100936.
Adv. No. 820042.**

United States Bankruptcy Court, D. Rhode Island.

April 22, 1983.

---

Pasco F. Loffredo, Chaiko & Loffredo, Cranston, R.I., for plaintiff.

Martin Schwartz, Law Offices of Donald Johnson, Chicago, Ill., for plaintiff (pro hac vice).

Edward E.V. D'Agostino, Providence, R.I., for debtors.

## DECISION GRANTING IN PART AND DENYING IN PART PLAINTIFF'S COMPLAINT TO DECLARE DEBT NONDISCHARGEABLE

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on General Electro Music, Inc.'s (GEM) complaint objecting to the discharge of certain debts pursuant to 11 U.S.C. § 523.[1]

At hearings held on December 8 and 9, 1982, the following evidence was presented.[2] In July 1981, the debtors, together with Ron's brother Ken Messore, applied for an organ franchise from GEM. It was contemplated and represented to GEM that Ron Messore was to handle the business affairs of the proposed venture, and that Ken would be in charge of sales. This arose as a specific topic of discussion because the parties were apparently in agreement that the enterprise would be viable only if Ron's personal credit and managerial expertise were present to complement Ken's sales ability. It is also uncontroverted that Ken was regarded as a super salesman, but that his credit rating and managerial skills were

---

1. This decision, which cites to provisions of the Bankruptcy Reform Act of 1978, is entered in accordance with the rule adopted by the United States District Court for the District of Rhode Island pursuant to an order of the Circuit Council for the First Circuit, effective December 25, 1982. We follow the lead of the Circuit Council in declining to "pre-commit ourselves on any legal or constitutional questions which may arise concerning this rule." Order of the Circuit Council for the First Circuit (December 22, 1982).

2. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

severely lacking. After Ron and Leilani filled out and signed all the necessary papers, including a personal financial statement and a personal guaranty,[3] GEM began delivering organs to Messore Organs, Inc. GEM extended a $25,000 line of credit to the corporation, and as each organ was sold, the corporation was required to remit the amount due to GEM on the sale. (Plaintiff's Exhibit B)

Beginning in January 1981, the corporation (whose bookkeeping was handled by Leilani Messore) stopped remitting proceeds to GEM, and by March 1981 the amount overdue on organs sold was approximately $9800. In April 1981, Ron discovered the default[4] and immediately contacted John Li, GEM's credit manager. John Li and Ron Messore attempted to establish a plan to cure the default and salvage the operation, but this was unsuccessful. In October 1981, to reduce expenses, the Messores vacated the business location and moved the organ inventory to their Cranston residence. Sales continued to decline, and on November 23, 1981 the debtors filed a Chapter 7 petition. GEM made arrangements to pick up the unsold organs, which were still stored in the debtors' Cranston house,[5] but on the day before GEM's scheduled pick-up, the organs were stolen.

GEM filed the instant complaint objecting to the dischargeability of its debt resulting from the unremitted proceeds of sales, and for the additional loss sustained as a result of the theft of the remaining organs. GEM argues that $9800 due from the sale of organs, and that $14,800[6] in damages sustained as the result of the theft of unsold organs, all of which is personally guar-

anteed by the debtors (up to $25,000), are nondischargeable because: (1) GEM extended credit based upon the debtors' personal financial statement, which was materially false and which was furnished by the debtors with the intent to deceive, 11 U.S.C. § 523(a)(2)(A); (2) the debtors obtained credit based on the false representation that Ron Messore would handle the management end of the business, 11 U.S.C. § 523(a)(2)(A); (3) the Messores received an extension of credit based on the false representation that there was sufficient equity in their real estate to cover the amount owed in the summer of 1981; and (4) the debt was for defalcation while acting in a fiduciary capacity, 11 U.S.C. § 523(a)(4).

For purposes of clarity, that portion of the debt owed on account of organs sold, and the amount owed on the stolen collateral will be treated separately.

THE DEBT DUE ON ORGANS SOLD

The evidence is contradictory concerning the date and/or location of discussions between John Li and Ron Messore, but even accepting the debtors' version, the decision to grant the franchise was made in reliance upon and with the clear understanding that Ken would handle only sales, and that Ron would handle all other business. This finding is based on Ron Messore's knowledge that Ken had previously been turned down by GEM for a dealership, and that he (Ron) had discussed and stressed his own administrative abilities with John Li and/or his agent at their first meeting. John Li testified, and we conclude, that the $25,000 credit extension for the dealership was granted in reliance on Ron's previous business experience, his as-

3. The debts in question are actually those of the corporation. Since the corporation was wholly owned by Ron Messore and its debts were guaranteed by Ron and Leilani, however, we will treat the line of credit and resulting debt as being those of the individual debtors. At the hearing, the parties proceeded on this assumption.

4. Leilani Messore admitted that she and Ken were concealing the default in payments to GEM from Ron, who discovered the problem on April 27, 1981 when he intercepted a letter

from GEM to Ken demanding payment of $9,802.21. (Defendant's Exhibit 2)

5. By this time, the trustee in bankruptcy was in possession of the debtors' Cranston real estate. GEM arranged to pick up its unsold organs after the trustee consented to an abandonment of the property.

6. The debt to GEM is scheduled as $24,600. The testimony is that $9800 was due on organs sold; therefore, the remainder of the debt was the value (to GEM) of the stolen inventory.

surance that he would personally oversee the day to day affairs of the business, and his personal guaranty. (Plaintiff's Exhibit A). Also, the decision to grant the franchise was not made until after GEM received a personal statement and guaranty from Ron Messore.

The record also discloses, and we conclude therefrom, that Ron never really intended to become involved with the operation of the organ dealership. Both Ron and Leilani admitted that Ron had other full-time employment, and that for him the corporation was "merely an investment." Ron admitted that his only involvement with the business (prior to April 1981) was to move a few organs in the evening. We find that Ron's representation that he would handle business matters was intentionally made in order to obtain the franchise, at a time when Ron knew he would have little or no involvement in the business, that the credit line was extended based on said representation, and that the Plaintiff's reliance in this respect was reasonable.

11 U.S.C. § 523(a)(2)(A) provides that: (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

. . . .

> (2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—
>
> (A) false pretenses, a false representation, or actual fraud. . . .

For the reasons stated, the $9800 debt for unremitted proceeds of organs sold is determined to be nondischargeable.[7] 11 U.S.C. § 523(a)(2)(A). *See C.O.T.C.O. Gasoline, Inc. v. Jenes (In re Jenes),* 18 B.R. 405 (Bkrtcy.S.D.Fla.1981) (to be excepted from discharge action by debtor must be intentional); *Cook v. Cook (In re Cook),* 13 B.R. 189 (Bkrtcy.S.D.Fla.1981) (representations must be made knowingly).

---

**7.** An April 24, 1981 letter from GEM to the corporation states that 9 units were sold without remitting the amount due (approximately

## LIABILITY FOR STOLEN INVENTORY

■ The value of the inventory on hand when the debtors filed their Chapter 7 petition constitutes the remainder ($14,800) of the $24,600 debt owed to the Plaintiff. Based on a review of the entire record, the Court concludes that GEM has failed to establish that the portion of the debt attributed to the theft of the organs should be declared nondischargeable. *See National Agents Service Co., Inc. v. Duiser (In re Duiser),* 8 B.R. 397, 400 (Bkrtcy.W.D.Va. 1981) (burden of proof on party seeking to hold debt non-dischargeable).

John Li, GEM's credit manager, learned of the default in February 1981, and although GEM could have picked up the collateral at that time, it made no attempt to do so until December, ten months later. Li stated that GEM's reason for delaying the enforcement of its rights in the collateral was to take advantage of the Christmas selling season, in an effort to minimize the loss to GEM. Accordingly, we find that GEM continued to extend credit after the default, *see Pierce-Phelps, Inc. v. Hollock (In re Hollock),* 1 B.R. 212, 215 (M.D.Pa. 1979) (there may be on-going line of credit subject to periodic evaluation), based on its independent business judgment, and not due to any misrepresentation or inducement by the debtors.

GEM's contention that it did not repossess the organs because Ron misrepresented the fact that he had sufficient equity in his property to secure a loan, is rejected for several reasons. Ron Messore's testimony was that he *thought* he had enough equity to cover the $9800 deficit, and GEM has not shown that this was an intentional misrepresentation. *See Wafer v. Peterson (In re Peterson),* 9 B.R. 835, 836 (Bkrtcy.D.Nev. 1981) (misunderstanding does not rise to level of misrepresentation). *Accord, Brant v. Zangrilli (In re Zangrilli),* 1 B.R. 717 (Bkrtcy.D.R.I.1979). GEM asserts that Ron Messore agreed to give GEM a security interest in his real property, but Ron testi-

---

$9800) to GEM (Defendant's Exhibit 2). This is not disputed by the Messores.

fied that there was no agreement—just discussion along those lines. The fact that GEM sent only promissory notes without a mortgage deed, and took no action to follow up on the execution of any security-type documents, supports the debtors' version of this part of the case.

GEM has not substantiated its claim that the organs were left in the possession of the Messores because of their misrepresentations. Accordingly, that portion of the debt arising from the theft of the collateral does not meet the requirements for nondischargeability enunciated in 11 U.S.C. § 523.

We also reject the argument that the debtors' personal statement supplied to GEM (Joint Exhibit 1) was a material misrepresentation upon which GEM relied. The statement was dated as of July 1, 1980, and GEM never requested updates, nor did it independently attempt to verify any of the information about which it now complains. *See generally, Telco Leasing, Inc. v. John Henry Patch, IV (In re John Henry Patch, IV),* 9 B.C.D. 1269, 24 B.R. 563 (D.Md.1982) (debtor didn't reasonably rely when it failed to verify statement); *First Service Corp. v. Schlickmann (In re Schlickmann),* 6 B.R. 281 (Bkrtcy.D.Mass.1980) (burden not met where credit check showed outstanding loans). Although GEM makes much of the fact that the Messores had requested a $10,000 bank loan just prior to applying for a dealership, it has not been shown that this was misrepresented to or concealed from GEM. In fact, GEM should have been on notice of the loan application, because the July 1 personal statement provided to it was originally completed on the Industrial National Bank form used to apply for the loan. Other discrepancies between the personal statement and the debtors' Chapter 7 petition have not been shown to be either material or intentional misrepresentations. *See Bardan Co., Inc. v. McCourt (In re McCourt),* 20 B.R. 388 (Bkrtcy.D.Mass.1982) (debtor must have knowingly made false representation); *Southern Discount Co. v. Mausser (In re Mausser),* 4 B.R. 728 (Bkrtcy.S.D.Fla.1980) (debt dischargeable since omissions on financial statement weren't intended to de-

ceive); *Brant v. Zangrilli (In re Zangrilli),* 1 B.R. 717 (Bkrtcy.D.R.I.1979) (error as to value is not misrepresentation).

Finally, GEM's contention that the debt in question resulted from a defalcation by the debtors while acting in a fiduciary capacity fails for lack of evidence. The fiduciary relationship required by 11 U.S.C. § 523(a)(4) must be a technical or express trust between the debtor and creditor. *Mullis v. Walker (In re Walker),* 7 B.R. 563 (Bkrtcy.M.D.Ga.1980). GEM has made no showing of such a relationship.

For the reasons discussed above, the complaint of General Electro Music, Inc. to have its debt declared nondischargeable is granted as to $9800 and denied as to $14,800. Enter order accordingly.