UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-20106

_____

THE STATE OF TEXAS, by and through the Board of Regents of
The University of Texas System and University of Texas Health
Science Center at Houston,

Plaintiff-Appellant,

versus

WILLIAM E. WALKER, M.D.,

Defendant-Third Party Plaintiff,
Appellee-Appellant,

THOMAS OLLIS HICKS; ELLEN CLARKE TEMPLE; BERNARD RAPAPORT; THOMAS
LOEFFLER; ROBERT JAMES CRUIKSHANK; ZAN W. HOLMES, JR.; MARTHA
ELLEN SMILEY; LOWELL H. LEBERMANN, JR.; MARIO EFRAIN RAMIREZ,
M.D.; M. DAVID LOW, M.D.,

Third Party Defendants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Texas

_____

May 28, 1998

Before DAVIS, JONES, and DENNIS, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This case presents a straightforward employment and
contract dispute mired in a procedural thicket. Our task is to
untangle the thicket, although, unhappily, we cannot finally
resolve the merits. We conclude, first, that the case was
correctly removed by University President Low, a counterclaim
defendant newly-joined on a "separate and independent claim" for
purposes of 28 U.S.C. § 1441(c). Second, the court did not err in

shielding the counterclaim defendants from Walker's § 1983 claims on qualified immunity grounds. Third, Walker's debt to the state for fees he owed before he filed for bankruptcy relief is dischargeable post-*Seminole*, although whether it is nondischargeable under 11 U.S.C. § 523(a)(6) is a question left to be addressed on remand.

## I. Background

Dr. Walker was a heart surgeon and a tenured faculty member at the University of Texas Health Science Center at Houston ("UTHSC"). As a condition of his employment, Walker joined the Medical Services, Research, and Development Plan ("MSRDP") by executing the standard MSRDP contract in 1980. The MSRDP contract required Walker to remit all professional fees he earned to the University of Texas ("University"). The MSRDP's by-laws define professional fees in part as fees for all court appearances, depositions, or legal consultations. During the period of his employment at UTHSC, Walker received substantial fees for court appearances, depositions, and legal consultations, but he never remitted any of them to the University. When Walker's noncompliance with the MSRDP came to the attention of the University, it investigated Walker's and other faculty members' personal retention of professional fees. Walker and the other faculty members denied that they retained fees in violation of the MSRDP. After attempts to settle the resulting contractual

2

disagreement failed, Walker was terminated by the Board of Regents of the University of Texas System in August 1994.

Prior to his termination, Walker filed for bankruptcy relief under Chapter 7 on September 1, 1992. His debts were discharged by the bankruptcy court on January 19, 1993. The University was not identified as a creditor in Walker's no-asset bankruptcy filing, and it did not file a proof of claim.

In February 1995, the State of Texas, by and through the Board of Regents of the University of Texas System and UTHSC ("State"), filed suit against Walker in state court. The State alleged conversion and breach of contract and sought an accounting of the fees retained by Walker. Walker counterclaimed against the State, made additional claims against the Regents in their individual capacities ("Regents"), and impleaded as an additional defendant UTHSC's president, M. David Low, in both his official and individual capacities. Walker alleged state tort and breach of contract claims, as well as substantive due process and equal protection claims pursuant to 42 U.S.C. § 1983, all of which were related to his allegedly improper termination.

The counter-defendants removed this case to federal court pursuant to 28 U.S.C. § 1441(c). The State and Walker subsequently filed motions for summary judgment. The district court granted partial summary judgment to the State, the Regents, and Low, dismissing Walker's federal § 1983 claims with prejudice based on sovereign and qualified immunity. The district court also granted

3

partial summary judgment to Walker, holding that the fees Walker retained prior to his filing bankruptcy on September 1, 1992, were discharged. The district court remanded to state court Walker's state-law claims against the State, the Regents, and Low, as well as the State's claims against Walker for fees earned after September 1, 1992.

Walker now appeals the district court's grant of summary judgment to the Regents and Low based on qualified immunity. The State appeals the district court's grant of summary judgment to Walker based on discharge in bankruptcy for Walker's fees earned pre-bankruptcy.

## II. Propriety of Removal

As an initial matter, Walker argues that the district court lacked jurisdiction to hear this case because removal by the Regents and Low under 28 U.S.C. § 1441(c) was improper. We review a district court's determination of the propriety of removal de novo. *See Vasquez v. Alto Bonito Gravel Plant Corp.*, 56 F.3d 689, 692 (5th Cir. 1995). Section 1441(c) is difficult to interpret, but under this court's precedent, it permitted removal of the case.

### A. *Carl Heck Engineers*

Although there is a split among the circuits on the point, this court has held that a third-party indemnity defendant may remove a case to federal court pursuant to § 1441(c). *See Carl Heck Engineers v. Lafourch Parish Police Jury*, 622 F.2d 133 (5th

4

Cir. 1980).[1]  Neither the Regents nor Low is a third-party indemnity defendant because there is no basis for Walker to assert that they are liable for any part of his alleged debt to the state. *See* Fed. Rule Civ. P. 14; Tex. Rule Civ. P. 38.  Rather, the Regents, joined in their individual capacities, and Low, newly joined both in his official and individual capacities, are counter-defendants in Walker's counterclaim.  This court has not previously extended the *Carl Heck* rationale to ordinary counter-defendants. Doing so would fly in the face of the well-pleaded complaint rule where the counter-defendants were the same parties as the state court plaintiffs.[2]

Here, however, the consequence of permitting removal satisfied *Carl Heck* without breaching the well-pleaded complaint rule.  We shall assume that the Regents cannot remove under § 1441(c) when joined in their individual capacities as counter-defendants, because (in their official capacities) they were the plaintiffs by and through whom the state sued Walker.  Low, on the

---

[1]  For a discussion of the circuit split, see 14A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3724, at 388-393 (1985 & Supp. 1997).  *See generally* Michael C. Massengale, Note, Riotous Uncertainty: A Quarrel with the "Commentators' Rule" Against Section 1441(c) Removal for Counterclaim, Cross-Claim, and Third-Party Defendants, 75 TEX. L. REV. 659 (1997) (citing relevant cases with analysis).

[2]  The well-pleaded complaint rule bases removal jurisdiction on the existence of a claim lying within federal jurisdiction on the face of a plaintiff's well-pleaded complaint.  There has never been a suggestion that a defendant could, by asserting an artful counterclaim, render a case removable in violation of the well-pleaded complaint rule. *See, e.g., Rivet v. Regions Bank*, 118 S. Ct. 921 (1998).

5

other hand, was not a party in the case in any way before Walker sued him for § 1983 violations.  If the rationale of *Carl Heck* correctly affords third-party defendants the opportunity of § 1441(c) removal to federal court, to which they could have removed when sued alone, then that rationale protects Low.

## B.  Separate & Independent

Section 1441(c) authorizes removal to federal court of cases in which a "separate and independent" federal claim or cause of action is joined with a nonremovable claim or cause of action.[3] A federal claim is separate and independent if it involves an obligation distinct from the nonremovable claims in the case. *See American Fire & Cas. Co. v. Finn*, 71 S. Ct. 534, 540 (1951) ("[W]here there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)."); *see also* 14A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3724, at 364-66 (1985 & Supp. 1997).

---

[3]  Section 1441(c) states in full:

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c).

6

Walker contends that his claims against the Regents and Low were not "separate and independent" from his counterclaims against the State and, therefore, the district court lacked subject matter jurisdiction to hear this case. He is mistaken. *Finn* states that there is no "separate and independent" claim when the plaintiff

> suffered but one actionable wrong and was entitled to but one recovery, whether his injury was due to one or the other of several distinct acts of alleged negligence or to a combination of some or all of them. In either view, there would be but a single wrongful invasion of a single primary right of the plaintiff, namely, the right of bodily safety, whether the acts constituting such invasion were one or many, simple or complex.

*Finn*, 71 S. Ct. at 539-40 (quoting *Baltimore S.S. Co. v. Phillips*, 47 S. Ct. 600, 602 (1927)). Thus, a case involving the violation of a single primary right or wherein a party seeks redress for one legal wrong cannot contain separate and independent claims, despite multiple theories of liability against multiple defendants. *See Finn*, 71 S. Ct. at 540; *Able v. Upjohn Co.*, 829 F.2d 1330, 1332 (4th Cir. 1987).[4] When applied to a third-party defendant, this rule requires that the plaintiff's claims against the original defendant be "separate and independent" from the defendant's federal claims against the removing third-party defendant. *See Carl Heck Eng'rs*, 622 F.2d at 136; *see also In re Wilson Indus.,*

---

[4] In addition, *Finn* has been read to question whether claims can be separate and independent when they involve substantially the same facts and transactions. *See Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 104 (5th Cir. 1996); *Able*, 829 F.2d at 1332-33; *Addison v. Gulf Coast Contracting Servs., Inc.*, 744 F.2d 494, 500 (5th Cir. 1984).

7

*Inc.*, 886 F.2d 93, 96 (5th Cir. 1989); 14A WRIGHT ET AL., *supra*, § 3724, at 392-94.

In asserting that his claims against the State are not separate and independent from his claims against the Regents and Low, Walker is barking up the wrong tree. The proper comparison is between the State's claims against Walker and Walker's federal claims against the Regents and Low. The State seeks redress for Walker's alleged failure to remit his professional fees to the University. In contrast, Walker seeks redress from the Regents and Low for allegedly improperly terminating him. The State's claims against Walker and Walker's claims against the Regents and Low thus involve two distinct wrongs. Whether Walker was improperly terminated is a distinct wrong not dependent on whether Walker improperly retained professional fees in violation of the MSRDP.

Second, proof of Walker's § 1983 claims against the Regents and Low would not involve substantially the same facts as proof of the State's claims against Walker. If a substantive due process claim is cognizable at all, Walker must show that he had and was arbitrarily deprived of a property right in his employment. *See Regents of Univ. of Mich. v. Ewing*, 106 S. Ct. 507, 511-12 (1985) (assuming without deciding that a substantive due process claim exists for an adverse decision of an academic institution). Regarding his equal protection claim, Walker must show that he was treated differently during his termination proceedings than were other similarly situated doctors, and that there was no rational

8

basis for this difference in treatment. *See United States v. Abou-Kassem*, 78 F.3d 161, 165 (5th Cir. 1996). In contrast, for the State to succeed on its state-law claims against Walker, it must initially show that Walker breached his MSRDP contract, and its claims would not require proof of substantially the same facts as will be relevant to Walker's § 1983 claims against the Regents and Low.

As a consequence, the State's claims against Walker are separate and independent from Walker's federal claims against the Regents and Low, and removal under §1441(c) was procedurally proper.[5]

## III. Qualified Immunity

The district court granted partial judgment as a matter of law on the ground of qualified immunity to the Regents and Low, in their individual capacities, with respect to Walker's § 1983 claims. A grant of judgment as a matter of law is reviewed de novo, examining the evidence in the light most favorable to the nonmovant. *See Channer v. Hall*, 112 F.3d 214, 216 (5th Cir. 1997). The moving party will prevail if he has demonstrated that there is

---

[5] Walker incorrectly cites *McKay v. Boyd Constr. Co.*, 769 F.2d 1084 (5th Cir. 1985), in support of his contention that removal was improper. *McKay* involved removal under § 1441(a), not § 1441(c). The *McKay* court expressly distinguished its holding under § 1441(a) from its understanding of how the case would have come out had removal been proper under § 1441(c). *See id.* at 1087-88. *McKay* is inapplicable to our removal analysis in this case.

no genuine issue of material fact, and that he is entitled to judgment as a matter of law. *See id.*

Qualified immunity shields a public official exercising discretionary functions from liability for civil damages unless the public official's conduct violated clearly established constitutional or statutory rights of which an objectively reasonable person should have known. *See Harlow v. Fitzgerald*, 102 S. Ct. 2727, 2738 (1982); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 532-33 (5th Cir. 1997). This court reviews a claim of qualified immunity under a two-part analysis. First, it must be determined whether the plaintiff alleged the violation of a clearly established constitutional right. *See Coleman*, 113 F.3d at 533. Second, if so, we determine whether the defendant's conduct was objectively reasonable. *See id.*

The "touchstone" of the qualified immunity analysis is the "objective legal reasonableness" of the public official's conduct. *Anderson v. Creighton*, 107 S. Ct. 3034, 3038-39 (1987). That is, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 3039; *see also Malley v. Briggs*, 106 S. Ct. 1092, 1096 (1986) (stating that qualified immunity is designed to shield from civil liability "all but the plainly incompetent or those who knowingly violate the law").

10

## A. Substantive Due Process

This court has said, "To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). *Moulton* exaggerated the status of a substantive due process claim for academic protection, however, because the Supreme Court has not squarely decided the issue. *See Ewing*, 106 S. Ct. at at 511-12*. Moulton* held that no constitutionally protectible property interest existed, so it did not reach the question of arbitrary deprivation. In this case, as in *Ewing*, even if Walker's tenure is a property right, he has failed to show that the Regents' or Low's actions in terminating him were arbitrary or capricious.

Walker essentially argues that when the Regents terminated him at the instigation of Low, rejecting a faculty tribunal's contrary recommendation, the Regents denied him a proper hearing, acted partially, and failed to fully consider his arguments and defenses regarding his retention of professional fees. Both the Supreme Court and this court have held in related contexts that substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected

11

property interest.  *See Ewing*, 106 S. Ct. at 513; *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992).

Walker did not remit to the University the substantial outside professional fees he earned while a UTHSC professor.  The University alleged that his actions violated the MSRDP, and Walker contended that they did not or, even if they did, his debt was discharged in bankruptcy.  Walker was afforded a hearing before the Regents regarding this dispute.  They considered his side of the story and rejected it.  Having reviewed the record, we cannot conclude that the Regents' determinations -- that Walker retained professional fees that belonged to the University and moreover, that he refused to cooperate in resolving the matter -- so lacked a basis in fact that their decision to terminate him was arbitrary, capricious, or taken without professional judgment.[6]  At best, one might argue that reasonable minds could disagree on the propriety of Walker's termination, and that is insufficient to defeat a public official's qualified immunity.  *See Malley*, 106 S. Ct. at 1096.  Consequently, the Regents' and Low's actions in terminating Walker either were not unconstitutional or were not objectively unreasonable in light of the law as it existed at the time of

---

[6]  Walker also argues that the Regents and Low acted arbitrarily by (1) ignoring the fact that his debt had been discharged and (2) violating 11 U.S.C. § 525(a) which prohibits a governmental unit from terminating an employee because the employee has not paid a dischargeable debt.  Inasmuch as the dischargeability of this debt is not yet settled, *see infra* Part IV(B), appellees were entitled to qualified immunity against these claims.

12

Walker's firing.  The district court properly granted qualified immunity.

### B. Equal Protection

"The Equal Protection Clause 'is essentially a direction that all persons similarly situated should be treated alike.'" *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (quoting *City of Cleburne v. Cleburne Living Center*, 105 S. Ct. 3249, 3254 (1985)).  As the district court correctly concluded, Walker is not a member of a suspect class.  Therefore, under equal protection analysis, rational basis scrutiny applies.  *See Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).

Walker argues that the Regents and Low treated him differently from other similarly situated UTHSC faculty members who failed to remit their professional fees to the University.  He is incorrect.  Walker's case is factually distinct because he defied the University and refused to cooperate in resolving the dispute over the MSRDP.  The other "similarly situated" faculty members to whom Walker refers all cooperated with the University, and most eventually reached settlement agreements regarding their improperly retained professional fees.  Because any difference in treatment between Walker and other faculty members was based on distinctions in their factual situations, the Regents and Low had a rational basis for their treatment of Walker.  The counter-defendants are entitled to qualified immunity from Walker's equal protection claim.

13

## IV.  Discharge in Bankruptcy

The State contends that the district court erred in holding that Walker's debt to the University for professional fees earned prior to September 1, 1992, was discharged.  The State makes two arguments: (1) the Eleventh Amendment barred the bankruptcy court from discharging Walker's debt to the State; and (2) Walker's debt was nondischargeable under 11 U.S.C. § 523(a)(6) because it was a "willful and malicious injury" against the State.  We hold, first, that the Eleventh Amendment did not preclude the discharge of Walker's debt to the State, and second, that there exists a fact issue regarding whether Walker's debt was nondischargeable under § 523(a)(6).[7]

### A.  The Eleventh Amendment and Bankruptcy Discharge

Walker's bankruptcy filing did not list the State as a creditor, and the State did not file a bankruptcy proof of claim. In fact, the State did not participate in any manner in Walker's

---

[7]  The State raised the Eleventh Amendment defense for the first time on appeal to this court, asserting that "it is . . . not clear that the bankruptcy court had jurisdiction to discharge an obligation to [UTHSC]."  Specifically, the State (1) mentions a potential Eleventh Amendment problem without substantive discussion in a footnote of its reply brief, (2) filed a Fifth Circuit Rule 28(j) letter prior to oral argument bringing to this court's attention a somewhat relevant case, and (3) discussed the Eleventh Amendment at oral argument.  While the State has been less than helpful in supplying any case law or arguments to support its contention that the Eleventh Amendment barred the discharge of Walker's debt, it nonetheless has not waived the issue.  Because of the strong federalism concerns behind the Eleventh Amendment, we may properly consider the issue even at this stage of the proceeding. *See Edelman v. Jordan*, 94 S. Ct. 1347, 1362-63 (1974); *Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 555 (5th Cir. 1988).

14

bankruptcy case. Subsequently, in this entirely separate proceeding, the State sued Walker for conversion and breach of contract. Walker asserted the affirmative defense that his debt to the State was discharged in bankruptcy. The district court agreed with Walker, insofar as his debt to the State consists of professional fees earned prior to Walker's bankruptcy.

Consequently, the precise issue here is whether the Eleventh Amendment prevents the discharge of a debt owed to a state in a bankruptcy proceeding in which the state does not participate in any fashion.[8] In deciding that it does not, we mean only that the discharge may be raised as a defense to the state's suit on the debt.[9]

---

[8] Prior to *Seminole Tribe v. Florida*, 116 S. Ct. 1114 (1996), some courts held that debts owed to a state were dischargeable in bankruptcy even if the state had not filed a proof of claim. *See In re Glidden*, 653 F.2d 85, 89 (2d Cir. 1981); *Connecticut v. Crisp*, 521 F.2d 172, 178 (2d Cir. 1975); *Iowa State Dep't of Soc. Servs. v. Morris*, 10 B.R. 448, 455-56 (Bankr. N.D. Iowa 1981). The rationale behind these cases is that the Eleventh Amendment only protects a state from federal court money judgments paid out of the state treasury. *See Crisp*, 521 F.2d at 178; *Morris*, 10 B.R. at 456. Because a judgment of discharge in a bankruptcy case does not require payment out of a state's coffers, discharge does not implicate the Eleventh Amendment. *See Crisp*, 521 F.2d at 178; *Morris*, 10 B.R. at 456. The reasoning of these case is incorrect, as expressed clearly and emphatically in *Seminole*: "The Eleventh Amendment does not exist solely in order to prevent federal court judgments that must be paid out of a State's treasury, it also serves to avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Seminole*, 116 S. Ct. at 1124 (internal citations and quotations omitted).

[9] The State does not assert that the Eleventh Amendment barred the federal district court from adjudicating Walker's defense of discharge in this case. Once the case was removed, the court had jurisdiction over the State's claims against Walker, and

15

The Eleventh Amendment jurisdictionally bars a suit in federal court by a private individual against an unconsenting state—absent waiver or congressional abrogation of sovereign immunity pursuant to section five of the Fourteenth Amendment—regardless of the relief sought by the plaintiff. *See* U.S. CONST. amend. XI; *Seminole Tribe v. Florida*, 116 S. Ct. 1114, 1124 (1996). This court has recently held that even in an area of the law under the exclusive control of the federal government, such as bankruptcy, the Eleventh Amendment absolutely bars such suits. *See In re Estate of Fernandez*, 123 F.3d 241 (5th Cir. 1997) (holding attempted statutory waiver of sovereign immunity under 11 U.S.C. § 106(a) unconstitutional).[10]

Cases that have considered *Seminole*'s impact on bankruptcy practice have generally concerned adversary proceedings brought by the trustee or a party in interest against the state in

---

his assertion of the discharge defense was not equivalent to seeking affirmative relief, such as an injunction against further collection efforts under 11 U.S.C. § 524. We have no occasion to consider the road not taken by Walker.

[10] It is also well settled that suits against certain state agents or instrumentalities fall within the Eleventh Amendment's compass. *See Regents of Univ. of Cal. v. Doe*, 117 S. Ct. 900, 903–04 (1997). The parties in this case do not dispute that UTHSC and the Regents of the University of Texas, sued in their official capacities, may invoke the State's Eleventh Amendment immunity; they are "arms" of the state for purposes of the Eleventh Amendment. *See id.; United Carolina Bank v. Board of Regents of Stephen F. Austin State Univ.*, 665 F.2d 553, 556-61 (5th Cir. Unit A 1982).

16

federal court to recover money damages.[11]  Just as *Seminole* renders 11 U.S.C. § 106(a) unconstitutional, it perforce deprives federal courts of jurisdiction over these unconsented-to suits against the state.  The extent to which filing a proof of claim constitutes waiver of this immunity is uncertain.  The Fourth Circuit has held that even where the state filed a proof of claim for one type of past due taxes, it did not waive Eleventh Amendment immunity against an adversary proceeding in bankruptcy court to determine a different type of tax.  *See In re Creative Goldsmiths, Inc.,* 119

---

[11]  Three recent lower court cases are representative.  In *Kish v. Verniero*, 212 B.R. 808 (D.N.J. 1997) (Brown, J.), and *Rose v. United States Dept. of Educ.*, 214 B.R. 372 (Bankr. W.D. Mo. 1997) (Koger, J.), the debtors filed actions directly against the state to determine the dischargeability of certain debts owed to the state.  In both cases, the state had not filed a proof of claim in the debtors' bankruptcy proceedings.  Both courts held that they lacked jurisdiction pursuant to the Eleventh Amendment to hear the debtors' claims against the state.

In *In re Martinez*, 196 B.R. 225 (D.P.R. 1996), the debtors filed for bankruptcy under Chapter 13 in 1985.  The debtors listed a tax debt to the Treasury of the Commonwealth of Puerto Rico ("Treasury") on their schedule of creditors, but the Treasury did not file a proof of claim.  The district court found that the Treasury was aware of the debtors' bankruptcy petition.  A reorganization plan was confirmed by the bankruptcy court in 1986.  In 1989, the Treasury (an arm of a state for purposes of the Eleventh Amendment), filed a tax lien on the debtors' property.  The debtors alleged that the Treasury had violated the automatic stay and, therefore, should be liable for actual and punitive damages.  *See id.* at 226-27.  The district court held that "it is clear that Treasury violated the debtors' automatic stay when Treasury filed a tax lien over debtors' property after the Chapter 13 petition had been filed."  *Id.* at 228.  Nonetheless, it also held that it did not have jurisdiction over the debtors' claim against Treasury for willful violation of the automatic stay because of Treasury's sovereign immunity, which had not been waived.  *See id.* at 230.  Treasury's lien remained in place despite the fact that Treasury both had actual knowledge of debtors' bankruptcy proceeding and refused to participate in that proceeding.

F.3d 1140, 1149 (4th Cir. 1997). Since UTHSC never filed a proof of claim, however, waiver is irrelevant to the present analysis. The pressing issue here is whether a bankruptcy case, in and of itself, constitutes an unconsented suit against a creditor state, so that the debtor's discharge, which "operates as an injunction" against collection of the debt, 11 U.S.C. § 524(a)(2), is ineffectual against the state under the Eleventh Amendment.

The argument for an Eleventh Amendment bar would assert that although the State was not a named defendant in Walker's bankruptcy case, it was an indirect party because its legal rights were adjudicated and altered (albeit without its knowledge) when the bankruptcy court discharged Walker's debt. *Cf. Regents of Univ. of Cal.*, 117 S. Ct. at 904-05 (holding that the "underlying Eleventh Amendment question" is the state's "potential legal liability," not whether any award of damages would actually come from the state's coffers); *Kish v. Verniero*, 212 B.R. 808, 814 n.5 (D.N.J. 1997) (citing *Regents of University of California v. Doe* and stating that "the relevant inquiry for Eleventh Amendment purposes is whether a state's potential legal rights are affected"). If Walker's discharge was valid, then the State was enjoined in perpetuity from collecting that debt. *See* 11 U.S.C. § 524(a)(2). This can be viewed as both subjecting the state to the indignity of the coercive powers of a federal court, *see Seminole*, 116 S. Ct. at 1124, and significantly altering the legal

18

rights of the state, *see Regents of Univ. of Cal.*, 117 S. Ct. at 904.

Put another way, discharging a debt owed to the state either restrains the state from acting by enjoining it from collecting the debt, or compels the state to act by forcing it to file a proof of claim in bankruptcy court in order to collect the debt.[12]  The state is thus presented with a Hobson's choice: either subject yourself to federal court jurisdiction or take nothing.[13] If the state acts, it is potentially forced to waive its sovereign immunity by filing a proof of claim in the bankruptcy court.[14]  If the state does nothing, it is permanently barred from collecting its debt and from recovering a pro rata share of the debtor's

---

[12]  The Supreme Court has held that "[t]he general rule is that a suit is against the sovereign if 'the judgment would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 104 S. Ct. 900, 908 n.11 (1984) (quoting *Dugan v. Rank*, 83 S. Ct. 999, 1006 (1963)).

[13]  *But see DeKalb County Div. of Family and Child Servs. v. Platter*, 1998 WL 138847, at *3 (7th Cir. Mar. 26, 1998) (arguing that "the imposition of this decision by Congress on the states 'does not amount to the exercise of federal judicial power to hale a state into federal court against its will and in violation of the Eleventh Amendment.'" (quoting *Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777, 787 (4th Cir. 1997))).

[14]  After *Seminole*, some courts have held that a state waives its Eleventh Amendment immunity to some extent when it files a proof of claim in a bankruptcy proceeding. *See, e.g.*, *In re Creative* Goldsmiths, 119 F.3d 1140, 1148-49 (4th Cir. 1997); *Rose v. United States Dept. of Educ.*, 215 B.R. 755, 761-62 (Bankr. W.D. Mo. 1997); *In re NVR L.P.*, 206 B.R. 831, 850-51 (Bankr. E.D. Va. 1997) (collecting cases and extensively discussing waiver).

estate. It can be argued that the Eleventh Amendment should prevent a state from being forced to make such a choice.[15]

Resting as it does on extrapolations from Supreme Court cases, this argument is not specious, but it is ultimately unpersuasive on the facts before us. Its key assumption is the equation of a bankruptcy case with a suit *against* the state, but this assumption is flawed. In a bankruptcy case, in its simplest terms, a debtor turns over his assets, which constitute the estate, for liquidation by a trustee for the benefit of creditors according to their statutory priorities. Bankruptcy law modifies the state's collection rights with respect to its claims against the debtor, but it also affords the state an opportunity to share in the collective recovery. Bankruptcy operates by virtue of the Supremacy Clause and without forcing the state to submit to suit in federal court. *See Maryland v. Antonelli Creditors' Liquidating Trust*, 123 F.3d 777, 787 (4th Cir. 1997) ("While resolution of an adversary proceeding against a state depends on court jurisdiction over that state, the power of the bankruptcy court to enter an order confirming a plan . . . derives not from jurisdiction over

---

[15] *But see New Jersey v. Mocco*, 206 B.R. 691 (D.N.J. 1997) (holding that a potential state-court fraud judgment owed to a state that had notice of a pending bankruptcy proceeding and failed to file a proof of claim could be discharged without violating the Eleventh Amendment); *In re Kings Terrace Nursing Home & Health Related Facility*, 184 B.R. 200 (S.D.N.Y. 1995) (holding that a state may not recoup pre-petition Medicaid overpayments to the debtor because the state knowingly and intentionally failed to file a proof of claim and, therefore, the debt was discharged when the debtor's bankruptcy plan was confirmed).

the state or other creditors, but rather from jurisdiction over debtors and their estates.").

From this standpoint, Walker's entitlement to assert his discharge against the state's claims invoked no Eleventh Amendment consequences. The state never was hauled into federal court against its will in the bankruptcy. In fact, because the state was never notified of the bankruptcy and never had the opportunity to file a timely claim, bankruptcy law should ordinarily expressly protect the state's claim from being discharged. *See* 11 U.S.C. § 523(a)(3)(B).[16] That is just the provision on which the state predicates its request for relief against the discharge defense here.

_____

[16] 11 U.S.C. § 523(a)(3)(B) states that a debtor is not discharged from certain claims, including those for willful and malicious injury, if the creditor was not listed or scheduled by the debtor in time to permit timely filing of a proof of claim and timely request of a determination of dischargeability. Walker, mysteriously, filed a "no-asset" case, in which creditors are informed that they need not file proofs of claim because such filings would be futile. But his failure to notify the University also deprived it of the opportunity timely to pursue a nondischargeability action.

Another peculiarity about this case might have posed an Eleventh Amendment problem but has not been raised. The Bankruptcy Code provides that federal courts have exclusive jurisdiction of four types of nondischargeability claims, including the willful and malicious injury exception, § 525(a)(6), on which the state relies. *See* 11 U.S.C. § 523(c). This provision ordinarily requires a creditor to proceed only in federal court to obtain a nondischargeability ruling on any of those four grounds, whether or not the creditor received timely notice of the bankruptcy case. *See* 11 U.S.C. § 523(a)(3)(B). The state did not initially pursue this course, however, and does not challenge the current procedural posture of the case. Equally important, Dr. Walker has not challenged the state's right to litigate nondischargeability under § 523(a)(6) under the circumstances before us.

Additional support for our view that the granting of a bankruptcy discharge does not offend the Eleventh Amendment -- although commencement of certain adversary proceedings directly against a state that has not filed a proof of claim in a bankruptcy case would do so -- derives from hoary Supreme Court authority. The Court has long held that a federal bankruptcy court decision can affect the lien interests of the states. *See Gardner v. New Jersey*, 67 S. Ct. 467 (1947). In *Gardner*, the Court overruled an apparent Eleventh Amendment objection to the process of adjudicating the validity and priority of competing liens where the state had filed a proof of claim:

> It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure. If the claimant is a State, the procedure of proof and allowance is not transmitted into a suit against the State because the court entertains objections to the claim. The State is seeking something from the debtor. No judgment is sought against the State. The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a res. It is none the less such because the claim is rejected in toto, reduced in part, given a priority inferior to that claimed, or satisfied in some way other than payment in cash. When the State becomes the actor and files a claim against the fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim.

> The extent of the constitutional authority of the bankruptcy court in this respect was passed upon in *People of State of New York v. Irving Trust Co.*, 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815. In that case the Court sustained an order of the bankruptcy court which barred a State's tax claim because not filed within the time fixed for the filing of claims. The Court stated, "If a state desires to participate in the assets of a bankrupt, she must submit to appropriate requirements by the

22

> controlling power; otherwise, orderly and expeditious proceedings would be impossible and a fundamental purpose of the Bankruptcy Act would be frustrated."
>
> In the present circumstances there is, therefore, no collision between § 77 and the Constitution.

*Gardner*, 67 S. Ct. at 472 (internal citations omitted). Until these cases are overruled, *Seminole* does not and should not impair their force.

This is a roundabout way to concluding that unless Walker's debt was nondischargeable under § 523(a)(6), his discharge could be raised against the state's lawsuit to collect a prepetition debt.

**B. The Willful and Malicious Injury Exception to Discharge**

The final issue is the applicability of § 523(a)(6) to Walker's acts in breaching his contract and failing to account to UTHSC for his outside earnings.

Section 523(a)(6) bars the discharge of a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). A "willful and malicious injury" results from an act done with the actual intent to cause injury, not from an act done intentionally that causes injury. *See Kawaauhau v. Geiger*, 118 S. Ct. 974, 977-78 (1998). In other words, "for willfulness and malice to prevent discharge under § 523(a)(6), the debtor must have intended the actual injury that resulted." *In re Delaney*, 97 F.3d 800, 802 (5th Cir. 1996). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)."

23

*Kawaauhau*, 118 S. Ct. at 978. "[I]ntent to injure may be established by a showing that the debtor intentionally took action that necessarily caused, or was substantially certain to cause, the injury." *In re Delaney*, 97 F.3d at 802.

Neither a claim for breach of contract nor the tort of conversion necessarily involves an intentional injury. *See Kawaauhau*, 118 S. Ct. at 977 (negligence and breach of contract); *National Union Fire Ins. Co. v. Care Flight Air Ambulance Serv., Inc.*, 18 F.3d 323, 325 (5th Cir. 1994) (conversion); *Moody v. Smith*, 899 F.2d 383, 385 (5th Cir. 1990) (conversion). The act of conversion, however, can result in a "willful and malicious injury." *See McIntyre v. Kavanaugh*, 37 S. Ct. 38 (1916); *see also Kawaauhau*, 118 S. Ct. at 978 (reaffirming the holding of *McIntyre*). In addition, under Texas law, a claim for breach of contract and the tort of conversion may arise from the same set of facts. *See Care Flight Air Ambulance Serv.*, 18 F.3d at 326.

Walker admits that he acted intentionally when he kept the professional fees he earned while a UTHSC faculty member. Consequently, the issue before this court is whether it is appropriate to grant Walker judgment as a matter of law that his pre-bankruptcy debt to the University is discharged and to conclude that § 523(a)(6) is inapplicable because the injury suffered by the State allegedly was not intended by Walker (*i.e.*, was not "willful and malicious").

The district court found that Walker's retention of his professional fees was an "innocent and technical" act rather than a "willful and malicious injury." *See Davis v. Aetna Acceptance Co.*, 55 S. Ct. 151, 153 (1934) (Cardozo, J.) ("[A] willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice."); *see also Kawaauhau*, 118 S. Ct. at 978 (reaffirming the holding of *Davis*). For the following reasons, we reverse the district court's grant of judgment as a matter of law to Walker on the issue of § 523(a)(6) nondischargeability. An issue of fact exists regarding whether Walker was aware of his obligations to the University under the MSRDP and nonetheless knowingly kept his professional fees with the intent of depriving the University of money owed to it.

Walker signed his MSRDP contract in 1980. The MSRDP contract expressly states that all fees received by a faculty member for "professional services" are to be assigned to the University. The MSRDP's by-laws expressly state that "professional fees" include fees for all "court appearances, depositions, or legal consultations." The MSRDP contract and by-law language is crystal clear, and all MSRDP participants were sent a memorandum in November 1990 reminding them that "fees for all court appearances, depositions and legal consultations (including expert witness fees) shall be deposited in the departmental MSRDP

account." Walker claims that he did not receive this memorandum and that he did not read the MSRDP by-laws until 1993, months after his September 1992 bankruptcy filing. He also testified that the general belief among UTHSC faculty members was that professional fees earned for legal consulting need not be remitted to the University. The UTHSC faculty tribunal that reviewed Walker's case as part of UTHSC's grievance procedures found that there was a lack of understanding among faculty members about the MSRDP's requirements. Based upon these conflicting facts alone, what Walker knew regarding his obligations under the MSRDP and when he knew it are disputed. If a factfinder were to decide that Walker knew of his obligations under the MSRDP contract and its by-laws, either at the time he signed the contract or received the November 1990 memorandum, then it might also find that Walker knowingly retained his professional fees in violation of the MSRDP, an act which he knew would necessarily cause the University's injury. This, in turn, could result in a finding of "willful and malicious injury." Such factual issues must be submitted to a trier of fact in order to determine if Walker's debt was nondischargeable under § 523(a)(6).

## V. Conclusion

For the foregoing reasons, we affirm the district court's judgment upholding the Regents' and Low's qualified immunity, and we reverse the district court's judgment regarding Walker's discharge in bankruptcy.

26

**AFFIRMED IN PART, REVERSED IN PART**, and **REMANDED.**