# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-40469

United States Court of Appeals
Fifth Circuit

**FILED**

May 31, 2016

Lyle W. Cayce
Clerk

SUSAN MILLS, A Tenured Faculty Member, University of Texas - Brownsville,

      Plaintiff–Appellant,

v.

JULIET GARCÍA, In her Official Capacity; ALAN F. J. ARTIBISE, In his Official Capacity; DANIEL HEIMMERMAN, In his Official Capacity; UNIVERSITY OF TEXAS AT BROWNSVILLE, a Domestic Political Corporation,

      Defendants–Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:13-CV-68

Before DENNIS, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:*

      Having granted Defendants–Appellees' Motion to Recall the Mandate and to Modify the Opinion, we withdraw the prior opinion, 614 F. App'x 174 (5th Cir. 2015), and substitute the following, which is amended only as to Part III.B:

---

\* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-40469

Plaintiff–Appellant Susan Mills was a tenured English professor at the University of Texas at Brownsville (UT-Brownsville). When it was first recommended that Mills be terminated, an independent faculty hearing committee unanimously found that the initial decision to terminate Mills "was arbitrary and unreasonable" and recommended that Mills be retained. Nonetheless, the President of UT-Brownsville rejected this recommendation and terminated Mills. Mills sued, asserting that the decision to terminate her tenure constituted an arbitrary deprivation of her property interest as a tenured professor. The district court granted UT-Brownsville's motion for summary judgment on Mills's substantive due process claim. Because there is a genuine dispute of material fact whether UT-Brownsville's President failed to consider a serious miscalculation in deciding to terminate Mills, we reverse the district court's grant of summary judgment and remand.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Susan Mills was a tenured professor in the English Department at UT-Brownsville with English M.A. and B.A. degrees. When UT-Brownsville ended its partnership with a local community college, university officials expected a decline in enrollment and initiated a "reduction in force" that ultimately resulted in Mills's termination.

### A.    The Reduction-in-Force Process

To facilitate the reduction in force,[1] the President of UT-Brownsville, Defendant–Appellee Dr. Juliet García, appointed faculty members from each department to serve on departmental review committees. These committees reviewed the credentials of faculty members and recommended which faculty should be terminated.

---

[1] This process and its guidelines were referred to as the "Provost's Charge."

2

No. 14-40469

The task fell on the departmental review committee to recommend four English Department faculty members for termination. The English Department had twenty-one faculty members and space for only seventeen under the reduction in force. Under the rules and regulations established by the Executive Vice Chancellor for Academic Affairs for the University of Texas Regents in accordance with the Southern Association of Colleges and Schools (SACS),[2] the committee favored faculty with terminal postgraduate degrees (most commonly PhDs) in the fields in which they taught.

Importantly, the protocol established an overall preference for discipline-specific degrees over education degrees. As a policy, Ed.D. degrees (short for Doctor of Education) would not be considered "terminal degrees in the discipline or in a related discipline . . . outside of the College of Education." The SACS protocol also required at least eighteen hours of postgraduate coursework within the discipline taught to qualify as a teacher in that discipline—i.e., to teach English, a professor must have completed at least eighteen hours of English postgraduate coursework.

Essentially, the departmental review committee sorted the faculty members by their education into categories numbered from one to seven—the first level containing the most qualified faculty members assured of being retained, and the seventh containing the least qualified faculty recommended for termination. The committee recommended that all fourteen of the faculty with English, rhetoric, or linguistics PhDs be retained (levels one and two), as well as one professor with a PhD "minor in English" (level three). Thus, fifteen slots were filled by professors with PhDs, leaving two remaining slots. The committee also sorted all three of the faculty without postgraduate English

---

[2] Under Texas law, the UT Regents' rules and regulations have the force and effect of law. *Foley v. Benedict*, 55 S.W.2d 805, 808 (Tex. 1932).

degrees into level seven and recommended that they be terminated—this group included Mary Therese Gallegos, as elaborated further below. That left three faculty members in the middle—with English master's degrees, but without English PhDs—for two slots; one would be recommended for termination. These three individuals were Mills, Elizabeth Vidaurri, and Amy Frazier.

### B.     Mills or Gallegos?

As discussed further below, Frazier voluntarily left, and Gallegos was recommended for retention; so this appeal boils down to the question whether the UT-Brownsville officials arbitrarily preferred Mary Therese Gallegos to Mills in violation of substantive due process. This question turns on a serious miscalculation of Gallegos's relevant credentials. Mills has a B.A. in English and an M.A. in English, both from UT-Brownsville; whereas Gallegos has an Ed.D from Harvard University and an M.A. in secondary and adult education from the University of New Mexico. Thus, under the protocol, Gallegos did not initially receive preference for her postgraduate education degrees, and the committee placed her in level seven—recommending her for termination.

Within level six, the committee sorted the three professors with English master's degrees. The committee deemed all three "good teachers." Because Vidaurri served as department coordinator for dual enrollment, the committee concluded that she had distinguished herself positively from the other two candidates. As between Frazier and Mills, the committee concluded that, because Frazier received an "Exceptional Merit" award in 2009 that Mills had not received, Frazier should be ranked ahead of Mills. That left Mills as the eighteenth-ranked English Department professor, so the committee recommended that Mills be terminated. As the only terminated professor with a postgraduate English degree, Mills was ranked the highest among the faculty

recommended for termination. Mills was later rehired by UT-Brownsville to a non-tenured position as a lecturer.

### 1. *The Minority Recommendation*

Dr. Charles Dameron, the English Department chair, dissented from the committee's recommendation and filed a minority recommendation. In that recommendation, he expressed his view that Gallegos should be retained over anyone within level six. He justified this position based on Gallegos's education, experience, and value as "a workhorse in the department."

Dameron noted that there was an issue whether Gallegos's credentials (namely, her lack of a postgraduate English degree) qualify her to teach undergraduate English at all under the SACS protocol—which, as noted, requires at least eighteen postgraduate hours of study in the discipline taught.

Dameron explained that Gallegos's postgraduate "transcripts show that she has at least 24 graduate hours in linguistics and writing courses, so," in Dameron's view, "she meets the SACS minimum requirement of 18 hours that all UTB faculty must meet."

As explained below, this last point turns out to be false. Based on this misimpression, Dameron recommended that Gallegos be included in Priority Level Five and retained over "the three M.A.-qualified faculty in Priority Level Six." Defendant–Appellee and UT-Brownsville Provost and Vice President for Academic Affairs[3] Dr. Alan Artibise agreed with the minority recommendation and instructed the departmental review committee to "consider Mary Gallegos' Master of Arts degrees in Secondary/Adult Teacher Education and Elementary Education to be 'in the teaching field'" of English. The committee accordingly submitted a second recommendation—this time, categorizing Gallegos as level

---

[3] The Provost is the chief operations officer at UT-Brownsville, and the Vice President for Academic Affairs is the chief academic officer.

five and recommending that she be retained, and that Frazier and Mills be terminated. President García adopted this recommendation.

### 2. *Frazier Resigns and Mills Appeals*

Frazier opted to accept a voluntary buyout, but Mills appealed the termination decision.[4] Thus, Mills was next in line after Gallegos for the coveted seventeenth slot, as the faculty hearing committee's report notes.[5]

The hearing committee heard argument and received testimony from Mills, Provost Artibise, and minority-recommendation author Dameron, among others. The hearing committee found that Mills had proven by a greater weight of the evidence "that the decision to terminate her was arbitrary and unreasonable."[6] Specifically, the committee's report noted that Dameron testified "that he had double counted the [linguistics] courses and that there were only 9 hours" of pertinent English coursework in Gallegos's postgraduate transcript. The committee found that the "reassignment of Mary Therese Gallegos to Level 5 was unreasonable" to a professor who has a master's degrees in the teaching discipline, and that, because Gallegos does not have a master's degree in English, she should have been placed in level seven as initially recommended. The committee also found that because "Amy Frazier [was] taking severance, Susan Mills now becomes eligible for non-

---

[4] ROA.2164.

[5] This is a point of dispute. Mills points to the faculty hearing committee's report saying so. By contrast, the district court and UT-Brownsville point to testimony that Mills's placement on the list would not matter—she would have been terminated either way.

On summary judgment, we must take all reasonable inferences in favor of Mills, the nonmovant. *See Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir. 1991) ("Because factual disputes may not be resolved on motion for summary judgment, the plaintiff need not offer all of the evidence tending to support its case, only enough evidence 'from which a jury might return a verdict in [its] favor.'" (alteration in original)). Therefore, we conditionally infer that Mills would have obtained the seventeenth slot but for Gallegos's placement in level five.

[6] *See* Univ. of Tex. Sys. Bd. of Regents Rules & Regulations 31008, § 4.4 ("The institution has the burden to prove good cause for termination by the greater weight of the credible evidence.").

No. 14-40469

termination," and it unanimously recommended to the president that she "accept Professor Susan Mills'[s] appeal of her termination."

The president rejected the faculty hearing committee's recommendation and denied Mills's appeal.

\* \* \*

Mills sued the UT-Brownsville officials and the university in federal court, asserting claims for deprivation of procedural and substantive due process in violation of the Fourteen Amendment under 42 U.S.C. § 1983, seeking injunctive relief. After an abbreviated period for discovery, the district court adopted the magistrate judge's recommendation to convert UT-Brownville's motion to dismiss into a motion for summary judgment, and granted summary judgment to the Defendants–Appellees. Mills timely appealed only her substantive-due-process claim.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had federal-question jurisdiction under 28 U.S.C. § 1331. We have jurisdiction to review the district court's final judgment. 28 U.S.C. § 1291. We review a grant of summary judgment de novo. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the facts in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *Coleman*, 113 F.3d at 533.

## III. DISCUSSION

The sole issue on appeal is whether there is a genuine dispute of material fact that UT-Brownville deprived Mills of her property interest in continued

No. 14-40469

public employment in violation of substantive due process.[7] To prevail on a claim for violation of substantive due process in the public-employment context, the plaintiff must show "(1) that [s]he had a property interest/right in [her] employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). Here, it is undisputed that as a tenured English professor, Mills had a property interest in continued employment and that she has abandoned her procedural-due-process claim. Thus, the sole issue is whether UT-Brownsville's decision was substantively arbitrary or capricious.

## A.    Substantive Due Process Legal Standard

A public employer's decision to terminate a tenured employee's property interest in continued employment is arbitrary or capricious if the decision "so lacked a basis in fact" that it may be said to have been made "without professional judgment." *Texas v. Walker*, 142 F.3d 813, 819 (5th Cir. 1998). The terminated employee "must show that the decision was 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 631 (5th Cir. 2011) (per curiam) (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)).

The standard for establishing a substantive due process violation is "demanding." *Spuler v. Pickar*, 958 F.2d 103, 107 (5th Cir. 1992). This is so because "a federal court is generally not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Honore v. Douglas*, 833 F.2d 565, 569 (5th Cir. 1987) (citing *Bishop v. Wood*, 426 U.S. 341 (1976)).

---

[7] Mills abandoned the procedural due process claim that she asserted in the district court.

No. 14-40469

That said, we have also observed that "[t]his measure of judicial restraint . . . does not require slavish deference to a university's arbitrary deprivation of a vested property right." *Id.* (collecting cases). Our decision in *Honore* illustrates the application of the substantive due process standard on summary judgment. In *Honore,* the Thurgood Marshall School of Law of Texas Southern University effectively terminated an associate law professor who had been vocally critical of the dean, even though the faculty committee had unanimously recommended that he be granted tenure and retained. *Id.* at 567. The trial court granted the public employer's motion for summary judgment, and we reversed. *Id.* at 568, 570. We explained that the law professor was an adequate teacher who published legal scholarship, started a moot court competition and a law review, and chaired faculty committees as well as started a research and writing program. *Id.* at 569. "This testimony[] alone," we reasoned, "creates a genuine issue of material fact as to the arbitrary and capricious nature of [his] dismissal." *Id.* Therefore, we held that the professor was "entitled to a jury resolution of his substantive due process claim." *Id.*[8]

## B.   Analysis

Applying the substantive-due-process legal standard, we hold that had the final decision maker, President García, fully considered that Dameron erroneously double-counted Professor Gallegos's coursework and nonetheless decided to trust her department chair's minority opinion, the decision to terminate Mills would not have been arbitrary or capricious as a matter of law. However, because that material fact is subject to genuine dispute, the decision

---

[8] Because Mills sues the UT-Brownsville officials in their official capacities for prospective injunctive relief—rather than damages—there is no qualified-immunity issue. *Cf. Walker*, 142 F.3d at 819 (affirming district court's decision to grant qualified immunity to the university officials on summary judgment because the university's decision to terminate him did not so lack "a basis in fact that the[] decision to terminate him was arbitrary, capricious, or taken without professional judgment").

of the district court must be reversed. It is undisputed that Gallegos's transcript only reflected nine hours of postgraduate English coursework, and that eighteen hours of postgraduate English coursework are required to teach undergraduate English at UT-Brownsville. It is also undisputed that Dr. Dameron's recommendation, on which García based her decision to terminate Mills, stated, erroneously, that Gallegos had eighteen hours.[9]

There is a genuine issue of fact, however, about whether García was aware of and appreciated the error when making her termination decision. At the preliminary-injunction hearing in May 2013, García was questioned about the faculty hearing committee's findings and provided conflicting answers. On the one hand, to the question "Did . . . anybody indicate to you that Dr. Dameron . . . admitted that the amount of hours held by Dr. Gallegos was problematic?" García responded "We did not discuss that, no." On the other hand, García appeared to correct herself with the next question and answer: "But you did review that yourself, . . .?" García responded: "I knew that. Yes, I did, I'm sorry."

At her deposition, García provided further conflicting testimony, saying that she did not recall "reading the comment made by the appellate committee that, 'Dr. Dameron also said putting Gallegos in Level 5 is problematic.'" Nor did she recall that the appellate opinion explained that, "'[o]n the matter of Mary Gallegos qualifying for Level 5, Dr. Dameron said, 'Strict letter of the law, there is a concern,'" referring to Gallegos's lack of postgraduate English coursework.

Viewing this evidence in the light most favorable to Mills, as we must, we conclude a factfinder could reasonably infer that President García failed to

---

[9] At her deposition in November 2013, García testified that Dr. Dameron's minority recommendation "weighed heavy" in her deliberation "because of his broad-based experience both as a department chair, as a dean and as vice president for academic affairs."

consider evidence, available to her, that Dameron's minority recommendation was fundamentally flawed. *See Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 619 n.2 (5th Cir. 1994). A factfinder, therefore, could reasonably conclude that García's decision to terminate Mills was made "without professional judgment," *Walker*, 142 F.3d at 819, or "without a rational connection between the known facts and the decision or between the found facts and the evidence," *Lewis*, 665 F.3d at 631 (internal quotation marks omitted); *see also Walker*, 142 F.3d at 819 (decision is arbitrary if it "so lacked a basis in fact").

UT-Brownsville argues that "due process is not violated when an appeal hearing is held before an advisory panel whose recommendations are ultimately rejected." UT-Brownsville's argument purports to rely on our decision in *Honore*, 833 F.2d at 568. UT-Brownsville's reliance on *Honore* is misplaced because *Honore* stands for the contrary proposition. Though UT-Brownsville correctly points out that the faculty committee in *Honore* "unanimously recommended tenure," a recommendation that was rejected by the university president, we ultimately *reversed* summary judgment for the university on the professor's substantive-due-process claim. 833 F.2d at 568–69. UT-Brownsville conflates our decision upholding summary judgment as to the plaintiff's *procedural* due process claim, *id.* at 568 ("We find no merit in Honore's claim of a denial of procedural due process."), with our decision reversing summary judgment on the *substantive* due process claim, *id.* ("[D]espite this finding of procedural adequacy, we do not agree with the trial court's rejection of the substantive due process claim."). As in *Honore*, here, the faculty hearing committee recommended that Mills be retained and that Gallegos be terminated, and there exists a genuine dispute whether President García rejected its recommendation without considering its express finding that Dameron had double-counted Gallegos's coursework. This evidence, taken together with Mills's academic credentials and unblemished performance

No. 14-40469

evaluations, "creates a genuine issue of material fact as to the arbitrary and capricious nature of [Mills's] dismissal." *See id.* at 569. As in *Honore*, Mills is "entitled to . . . resolution of [her] substantive due process claim" at trial. *See id.*[10]

## IV. CONCLUSION

For the foregoing reasons, we REVERSE the district court's decision granting summary judgment on Mills's substantive due process claim and REMAND for further proceedings consistent with this opinion.

---

[10] Because Mills has sought only equitable relief under § 1983, she is not entitled to a jury trial. *See Harkless v. Sweeny Indep. Sch. Dist.*, 427 F.2d 319, 324 (5th Cir. 1970).

12